**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

STEPHANIE R. JOHNSON,

        **Plaintiff,**

                                        **Civil Action 2:18-cv-00245**
                                        **Judge George C. Smith**
        **v.**                            **Chief Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Stephanie R. Johnson ("Plaintiff"), brings this action under 42 U.S.C. §§ 405(g)

and 1383(c) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for Social Security Disability Insurance benefits

("SSDI") and Supplemental Security Income benefits ("SSI"). This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors

(ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply

(ECF No. 17), and the administrative record (ECF No. 7). For the following reasons, it is

**RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM**

the Commissioner's decision.

## I.  BACKGROUND

Plaintiff applied for disability benefits on October 17, 2014 and supplemental security

income on October 7, 2014.[1]  (R. at 11.)  Plaintiff's claim was denied initially and upon

---

[1] In her Statement of Specific Errors, Plaintiff indicates states that she filed her applications on
May 6, 2013.  (ECF No. 10, at pg. 2.)  She does not include a citation for this representation.

reconsideration.  (R. at 1–4, 8.)  Upon request, a hearing was held on May 11, 2017, in which

Plaintiff, represented by counsel, appeared and testified.  (R. at 11.)  A vocational expert also

appeared and testified at the hearing.  (*Id.*)  On August 9, 2017, Administrative Law Judge

Noceeba Southern ("the ALJ") issued a decision finding that Plaintiff was not disabled at any

time after October 18, 2013, the alleged onset date.  (R. at 11–27.)  On January 24, 2018, the

Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the

Commissioner's final decision.  (R. at 1–4.)  Plaintiff then timely commenced the instant action

on March 26, 2013.  (ECF No. 3.)

## II.  HEARING TESTIMONY

### A.  Plaintiff's Testimony

Plaintiff testified that she lives in Ohio with her boyfriend of five years and six-year-old

son.  (R. at 64, 71.)  Plaintiff testified that she does not attend her son's parent/teacher

conferences.  (R. at 68.)  Plaintiff also testified that her boyfriend does not work and is on

disability for "seizures and stuff like that."  (R. at 71–72.)  She also testified that her only source

of income has been from child support.  (R. at 71.)  She further testified that she went through to

the twelfth grade but did not graduate and has not obtained a GED.  (R. at 64.)  Plaintiff stated

that she has had a driver's license since she was nineteen-years-old but that she cannot drive by

herself because of her anxiety.  (R. at 64–65, 70.)  Plaintiff also stated that because she does not

drive by herself she "really can't make some of [her doctor's appointments]."  (R. at 71.)

Plaintiff testified that regarding chores she does "very little of that."  (R. at 73.)  Plaintiff further

testified that she has not had any drug or alcohol problems in the past.  (*Id.*)

---

The Administrative Record, however, clearly indicates that Plaintiff filed her applications in
October 2014.  (R. at 11.)

Plaintiff indicated that the last place she worked was Anchor Hocking where she did "packing, sealing boxes, and blowing – making fish bowls." (R. at 65.) She further testified that she worked on a conveyor belt at Anchor Hocking. (*Id.*) Plaintiff stated that she did the work while standing and that she stood for eight to twelve hours a day. (*Id.*) Plaintiff also stated that the heaviest weight she typically had to lift and carry was "about thirty or forty pounds or more maybe." (*Id.*) Plaintiff testified that the job ended because her "anxiety got to the point where [she] couldn't leave the house" and she was fired for not going to work. (*Id.*) Plaintiff further testified that her anxiety "got to the point where if [she] left [her] house [she] felt sick" and that she "can't be around people" or go to the grocery store. (R. at 66–67.) Plaintiff also testified that in 2012 she worked for North Services for approximately six months. (R. at 66.)

Plaintiff explained that she has been seeing Dr. Roger Balogh for "probably about two or three years" every three months. (R. at 67.) Plaintiff stated that he has put her on a couple medications, but they are still working on something to "balance [her] out." (*Id.*) Plaintiff stated that she has experienced side effects from some of the medications including that her tongue would go numb or she would experience "itching, like hives." (*Id.*) Plaintiff also represented that she had been prescribed Xanax specifically for the trip to Columbus for the hearing. (*Id.*) Plaintiff further testified that she is currently taking Xanax and Promethazine. (R. at 73.)

**B. Vocational Expert Testimony**

John R. Finch, Ph.D. testified as the vocational expert ("VE") at the May 2017 hearing. (R. at 11.) The VE testified that Plaintiff's past work would be described as factory laborer, which is an unskilled position classified as heavy strength. (R. at 79.) The VE further testified that based on Plaintiff's testimony, she performed the job "closer to medium strength." (*Id.*)

Assuming a hypothetical individual of the same age, education, work experience as Plaintiff, with a residual functional capacity ("RFC") to perform at all exertional levels, except that the individual would be able to complete simple, routine tasks and simple to moderately complex tasks, and that the individual would interact with the public occasionally but on a superficial basis, as well as with co-workers and supervisors, and that the individual should be able to sustain goal-based work but not at a production rate pace, and the individual would need a position with low-stress such that there are only occasional decisionmaking and changes required, and the individual would need no tandem work, the VE testified that this individual would be able to perform Plaintiff's past work and other work as well. (*Id.*) The VE further testified that the other work included dish washer, hand packager, and cleaner. (R. at 79–80.)

Assuming a hypothetical individual of the same age, education, and work experience as Plaintiff, with the same RFC as above except that this individual has no interaction with the public and the individual would also be off task 7% of the day, the VE testified that this individual would be able to perform the same work as the first-described individual, including Plaintiff's past work. (R. at 80.) If the time spent off task was increased above 8%, the VE testified that this would be work preclusive. (R. at 81.) Assuming a hypothetical individual of the same age, education, and work experience as Plaintiff, with the RFC as stated previously except that this individual would be absent from work two or more days per month, the VE testified the amount of absenteeism would exceed what employers will tolerate. (R. at 80–81.)

### III.  MEDICAL RECORDS

**A.  Dr. Roger Balogh**

Dr. Roger Balogh provided an opinion via a "Medical Assessment of [Plaintiff's] Ability to do Work-Related Activities (Mental)" on April 8, 2015.[2] (R. at 488–90.)  At that time, Dr. Balogh had been treating Plaintiff for approximately two months.  (R. at 490.)  The assessment provided definitions for the following terms regarding the severity of limitations:

- Extreme:  "The individual has major limitations in this area with no useful ability to function."

- Marked:  "The individual has serious limitations in this area.  Ability to function is severely limited but not precluded."

- Moderate:  "The individual can function satisfactorily despite moderate limitations in this area."

- Mild:  "The individual can generally function well despite mild limitations in this area."

- None:  "The individual has no or minimal limitations in this area.  Any limitations are transient and/or are expected reactions to psychological stress."

(R. at 488.)  Dr. Balogh left blank the question of "[i]n your medical opinion, how many hours can your patient regularly work in a day? (0 – 8)."  (*Id.*)

Dr. Balogh opined that Plaintiff had moderate limitations in using judgment.  (*Id.*)  He opined that Plaintiff had marked limitations in following work rules, relating to co-workers, interacting with supervisor(s), dealing with work stresses, and maintaining attention/concentration.  (*Id.*)  Dr. Balogh further opined that Plaintiff had extreme limitations in

---

[2] Dr. Balogh also filled out a "Medical Opinion Re: Ability to do Work-Related Activities (Mental)" on May 2, 2017, however the page in the administrative record is illegible.  (R. at 47–48.)

dealing with the public and functioning independently.  (*Id.*)  When directed to "describe any limitations and related medical/clinical findings that support this assessment[,]" Dr. Balogh left that portion blank.  (*Id.*)

Furthermore, Dr. Balogh opined Plaintiff had mild limitations in her ability to understand and carry out simple job instructions, moderate limitations in her ability to understand and carry out detailed, but not complex, job instructions, and marked limitations in her ability to understand and carry out complex job instructions.  (R. at 489.)  When directed to "describe any limitations and related medical/clinical findings that support this assessment[,]" Dr. Balogh wrote that Plaintiff "has severe anxiety and panic" and that "she remains housebound."  (*Id.*)

Finally, Dr. Balogh opined that Plaintiff had mild limitations in maintaining personal appearance and marked limitations in behaving in an emotionally stable manner and relating predictably in social situations.  (*Id.*)  Dr. Balogh left blank the limitation for whether Plaintiff demonstrated reliability.  (*Id.*)  When directed to "describe any limitations and related medical/clinical findings that support this assessment[,]" Dr. Balogh wrote that Plaintiff has not gone to stores or restaurants in two years.  (*Id.*)  He also wrote that Plaintiff "recently started seeking [psychiatric] help the last [six] months and made it to appointments."  (*Id.*)

Plaintiff also visited Six County, Inc. numerous times between 2013 and 2017 where Dr. Balogh sometimes saw her.  (R. at 352–99, 417–28, 504–98.)  On February 18, 2015, Dr. Balogh saw Plaintiff and indicated her speech was pressured, thought processes were clear and linear, that she had no overt delusions, that her judgment and insight were intact, and that her attention span and concentration were within normal limits.  (R. at 419–26.)  On September 16, 2015, Dr. Balogh saw Plaintiff and indicated her speech was rapid, her thought processes were a "flight of ideas" because her "mind does appear to be going fast," that Plaintiff had no overt delusions, that

her judgment and insight were intact, and that she had impaired attention span/distractibility "due to anxiety and rapid thoughts."  (R. at 504–13.)

On December 16, 2015, Dr. Balogh noted that Plaintiff "still struggles with panic and irritability."  (R. at 515.)  He indicated that Plaintiff's speech was rapid, her thought processes were clear and linear, that she had no overt delusions, that she had limited insight into problem(s), and that she had impaired attention span/distractibility.  (R. at 514–23.)  On February 3, 2016, Dr. Balogh noted that Plaintiff "continues to struggle with high levels of anxiety and panic symptoms."  (R. at 525.)  He indicated her speech was of regular rate/rhythm/volume, that her thought processes were clear and linear but she had a "flight of ideas" because of her report that her "thoughts race," that she had no overt delusions, and that her judgment and insight were intact.  (R. at 524–33.)  On March 16, 2016, Dr. Balogh noted that Plaintiff was "still anxious and still irritable."  (R. at 535.)  He indicated her speech was of regular rate/rhythm/volume, her thought processes were clear and linear, she had no overt delusions, and that she had limited insight into problem(s).  (R. at 534–43.)

On May 11, 2016, Dr. Balogh noted that Plaintiff "continues to struggle with her anxiety."  (R. at 545.)  He indicated her speech was of regular rate/rhythm/volume, her thought processes were clear and linear, she had no overt delusions, and her judgment and insight were intact.  (R. at 544–53.)  On July 13, 2016, Dr. Balogh noted that Plaintiff stated she "is functioning better with her current medications" but "still deals with anxiety and panic symptoms."  (R. at 555.)  He indicated her speech was of regular rate/rhythm/volume, her thought processes were clear and linear, she had no overt delusions, and her judgment and insight were intact.  (R. at 554–63.)  On October 12, 2016, Dr. Balogh noted that Plaintiff was complaining of increased anxiety but that she was compliant with her medications and had no

hallucinations or paranoia. (R. at 565.) He indicated her speech was of regular rate/rhythm/volume, her thought processes were clear and linear, she had no overt delusions, her judgment and insight were intact, and she had impaired attention span/distractibility. (R. at 564–73.)

On November 16, 2016, Dr. Balogh noted that Plaintiff was "about the same as last visit" and that she continued "to have significant anxiety and panic." (R. at 575.) He indicated her speech was of regular rate/rhythm/volume, she had no overt delusions, and her judgment and insight were intact, but she had limited insight into problem(s). (R. at 574–83.) On January 4, 2017, Dr. Balogh noted that Plaintiff reported she was "doing adequately with medications at this time" and that she "still has anxiety, but able to go to grocery store at night." (R. at 590.) He indicated her speech was of regular rate/rhythm/volume, her thought processes were clear and linear, she had no overt delusions, and her judgment and insight were intact. (R. at 589–98.)

On April 5, 2017, Dr. Balogh saw Plaintiff and opined that "she is compliant with her medications with control of anxiety to point that she can function within her home, but remains unable to go out socially without experiencing anxiety and panic." (R. at 39.) He further opined that she was not a risk to herself or others. (*Id.*) Furthermore, he noted that she would need medication "to help her overcome anxiety" so that she could make it to the hearing on her application for disability benefits and supplemental security income. (*Id.*) Additionally, Dr. Balogh indicated that on average he expected Plaintiff's impairments or treatment would cause her to be absent from work more than four days per month. (R. at 48.) On July 5, 2017, Dr. Balogh noted that Plaintiff made it to the hearing "with use of extra Xanax." (R. at 50.)

### B. Other Six County, Inc. Providers

Plaintiff also saw other providers at Six County, Inc. including Andrea Hanson, LPCC, Jeffrey Parsons, LPCC, and Daniel Disalvo, CNP.  (R. at 352–60, 362, 366, 368, 370–77, 380–87, 390–97, 417.)  On November 25, 2013, Andrea Hanson saw Plaintiff and noted that Plaintiff reported "making" her boyfriend be with her due to anxiety and that "when he leaves the house she calls 10 minutes later wanting him to come home due to being anxious."  (R. at 368.)  Ms. Hanson further noted that Plaintiff did not want to schedule an appointment until January, saying that she was "too busy despite provider recommend[ation] for [an appointment]."  (*Id.*)

On May 8, 2014, Jeffrey Parsons saw Plaintiff and noted that Plaintiff "admits some concentration problems" and that Plaintiff reported drinking twelve cans of soda per day but was now down to three per day, although she still exhibited six of the criteria for caffeine intoxication ("nervousness, insomnia, flushed face, diuresis, gastrointestinal disturbance, and psychomotor agitation").  (R. at 366.)  On June 5, 2014, Mr. Parsons again saw Plaintiff and again noted that Plaintiff had cut soda from twelve cans per day to three cans and that she has panic attacks two or three times per day.  (R. at 362.)

On September 12, 2014, Daniel Disalvo saw Plaintiff and indicated her speech was of regular rate/rhythm/volume, her thought processes were clear and linear, she had no overt delusions, her judgment and insight were intact, and her attention span and concentration were within normal limits.  (R. at 370–77.)  Mr. Disalvo saw Plaintiff again on October 6, 2014 and noted her speech was of regular rate/rhythm/volume, her thought processes were clear and linear, she had no overt delusions, her judgment and insight were intact, and her attention span and concentration were within normal limits.  (R. at 380–87.)  On November 10, 2014, Mr. Disalvo saw Plaintiff and noted that she reported she continues to struggle with anxiety "really bad."  (R.

at 390.)  He indicated her speech was of regular rate/rhythm/volume, her thought processes were clear and linear, she had no overt delusions, her judgment and insight were intact, and her attention span and concentration were within normal limits.  (R. at 390–97.)

On November 14, 2014, Ms. Hanson saw Plaintiff and noted that Plaintiff self-reported she had recently lost her job, had an abortion, and has bad anxiety.[3]  (R. at 352.)  Ms. Hanson further noted that Plaintiff started smoking cigarettes at age twelve and currently smoked about one-and-a-half packs per day.  (R. at 354.)  Ms. Hanson indicated the following treatment recommendations:  develop coping skills to more effectively manage symptoms, increase independence and effectiveness in community living, process significant life events and make positive changes, and medication evaluation and management to treat symptoms.  (R. at 359.)  On February 26, 2015, Mr. Parsons saw Plaintiff and noted that Plaintiff reported she was having a panic attack right then and that she has them four or five times a day.  (R. at 417.)  He further noted that Plaintiff reported she is not depressed.  (*Id.*)

### C.  Dr. Kevin J. Edwards

Dr. Kevin Edwards, a non-treating source, completed a Confidential Psychological Evaluation for Social Security Disability about Plaintiff on January 27, 2015.  (R. at 86–96, 411–15.)  Dr. Edwards opined that Plaintiff did not have understanding or memory limitations but did have sustained concentration and persistence limitations.  (R. at 92.)  Dr. Edwards found Plaintiff to be "not significantly limited" in the following areas:

- The ability to carry out very short and simple instructions.

- The ability to sustain an ordinary routine without special supervision.

---

[3] The report indicates the visit occurred on November 14, 2013, but that Ms. Hanson signed it on November 15, 2013.  (R. at 352 & 359.)

- The ability to make simple work-related decisions.

- The ability to ask simple questions or request assistance.

- The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.

- The ability to be aware of normal hazards and take appropriate precautions.

- The ability to travel in unfamiliar places or use public transportation.

- The ability to set realistic goals or make plans independently of others.

(R. at 92–93.) Dr. Edwards further found that Plaintiff showed no evidence of limitation in the ability to work in coordination with or in proximity to others without being distracted by them. (R. at 92.)

Dr. Edwards opined that Plaintiff was "moderately limited" in the following areas:

- The ability to carry out detailed instructions.

- The ability to maintain attention and concentration for extended periods.

- The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.

- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

- The ability to interact appropriately with the general public.

- The ability to accept instructions and respond appropriately to criticism from supervisors.

- The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

- The ability to respond appropriately to changes in the work setting.

(R. at 92–93.)  Furthermore, Dr. Edwards found that Plaintiff has social interaction limitations, but also noted that she has "good social skills."  (R. at 93, 414.)

Dr. Edwards opined that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of her symptoms were not substantiated by the objective medical evidence alone.  (R. at 91.)  He further indicated that "exaggeration remained a distinct possibility" and that while Plaintiff "was deemed to be a marginally reliable informant[,]" the reported severity of her symptoms and nearly total inability to perform areas of daily functioning "appeared extreme."  (R. at 412, 414.)  Indeed, he noted that despite Plaintiff's numerous complaints of "feeling claustrophobic and feeling a need to flee, she sat relatively calmly for the 60-minute assessment."  (R. at 412.)  Furthermore, he indicated that the Plaintiff "was alert, oriented, and showed no problems with confusion or difficulty with concentration or conversation."  (R. at 413.)  Overall, Dr. Edwards determined that Plaintiff was not disabled, not limited to unskilled work based on her impairments, and noted that "all potentially applicable Medical-Vocational Guidelines would direct a finding of 'not disabled" given [Plaintiff's] age, education, and RFC."  (R. at 94–95.)

### D.  Hopewell Health Centers

Plaintiff visited Hopewell Health Centers at least fifty-three times for various complaints throughout 2013 and 2014.  (R. at 294–351, 429–76.)  Plaintiff's complaints included nausea, flu symptoms, chest congestion, lower back pain, anxiety, abdominal pain, neck pain, chronic cough, and mouth sores.  (R. at 294, 298, 304, 319, 321, 323.)  During some visits, Plaintiff was pregnant.  (R. at 333, 335, 346, 464, 476.)

# IV. ADMINISTRATIVE DECISION

On August 9, 2017, the ALJ issued her decision. (R. at 11–27.) At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 18, 2013, the alleged onset date.[4] (R. at 13.) The ALJ found that Plaintiff has the following severe impairments: anxiety disorder, panic disorder, and personality disorder. (*Id.*) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] can complete simple, routine tasks and simple to moderately complex tasks. She can interact occasionally but on a superficial basis with coworkers and supervisors but should avoid all interaction with the public. The [Plaintiff] can sustain goal-based work but not at a production rate pace. She needs a position that is low stress such that there is only occasional decisionmaking and only occasional changes required. The [Plaintiff] needs no tandem work. She would be off task seven percent of the day.

---

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

(R. at 17.)  The ALJ concluded that Plaintiff is capable of performing her past relevant work as a factory laborer because the work does not require the performance of work-related activities precluded by Plaintiff's RFC.  (R. at 25.)  Furthermore, relying on the testimony of the VE, the ALJ concluded that a hypothetical individual with Plaintiff's age, education, work experience, and RFC could perform Plaintiff's past work.  (*Id.*)  The ALJ found that although Plaintiff is capable of performing past relevant work, considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 26.)  She therefore concluded that Plaintiff was not disabled under the Social Security Act from October 18, 2013, through the date of the administrative decision.  (R. at 27.)

## V.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

Plaintiff puts forth one assignment of error. Plaintiff contends that the ALJ's decision should be reversed because she violated the Treating Source Rule by failing to provide good reasons for discrediting Dr. Balogh's opinions. (ECF No. 10, at pg. 4.) The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(d). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of [the plaintiff's] impairment(s), including [their] symptoms, diagnosis and prognosis, what [they] can still do despite impairment(s), and [their] physical or mental restrictions." 20. C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating

physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the plaintiff's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.* Despite this, there is no requirement that the ALJ expressly consider each of the *Wilson* factors within the written decision. *Walker v. Comm'r of Soc. Sec.*, No. 2:15-cv-558, 2016 WL 692548, at *13 (S.D. Ohio Feb. 22, 2016); *see also Tilley v. Comm'r of Soc. Sec.*, No. 09-6081, 2010 WL 3521928, at *6 (6th Cir. Aug. 31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

However, an ALJ must "give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [a] treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> The requirement of reason-giving exists, in part, to let [plaintiffs] understand the disposition of their cases, particularly in situations where a [plaintiff] knows that his [or her] physician has deemed him [or her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she [or he] is not, unless some reason for the agency's decision is supplied.

*Wilson*, 378 F.3d at 544–45 (internal quotations and citation omitted).  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the [plaintiff] as disabled."  *Germany—Johnson v. Comm'r of Soc. Sec.*, 312 F. App'x 771, 777 (6th Cir. 2008) (citation omitted).

Finally, the Commissioner reserves the power to decide certain issues, such as a plaintiff's RFC.  20 C.F.R. § 404.1527(e).  Although the ALJ will consider opinions of treating physicians "on the nature and severity" of a plaintiff's impairments, opinions on issues reserved to the Commissioner are generally not entitled to special significance.  20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

The ALJ considered Dr. Balogh's opinions with regard to Plaintiff's mental limitations and assigned them "some weight," explaining as follows:

> [Dr. Balogh's assessment] receives some weight because he is a treating psychiatrist and most of his opinions are consistent with [the Six County, Inc. treatment records.]  Nevertheless, although [the April 8, 2015] medical source statement receives some weight, it is too vague to receive great weight because terms such as "marked" and "moderate" are not vocational terms and do not correspond to specific degrees of work-related limitations, such as "occasional" or "frequent" social interactions.

(R. at 23.)  The Undersigned concludes that the ALJ offered good reasons for discounting Dr. Balogh's opinion and that the reasons are supported by substantial evidence.

In her decision, the ALJ noted that Dr. Balogh was Plaintiff's treating psychiatrist at Six County, Inc.  (R. at 23.)  The ALJ found, however, that Dr. Balogh's opinion was "too vague to receive great weight because terms such as 'marked' and 'moderate' are not vocational terms and

do not correspond to specific degrees of work-related limitations." (*Id.*) The ALJ noted that, to the extent possible, she assessed limitations in the RFC that corresponded to the definition of the terms that Dr. Balogh used. (*Id.*) The ALJ thus treated Dr. Balough's properly in this regard. *See Roberson v. Berryhill*, 2017 WL 1173907, at *3 (C.D. Cal., 2017) ("While terms like mild, moderate, marked , and extreme are used to describe the severity of functional limitations, RFC determinations typically use vocational terms such as occasional, frequent, and constant, because they describe the amount of time a claimant can do a certain task.") To formulate the RFC, the ALJ properly translated Plaintiff's impairments, as identified in Dr. Balough's opinion and the other medical evidence, with varying levels of severity, into a description of "the most" she can do, despite any limitations as required by the regulations. 20 C.F.R. § 416.945(a).

The ALJ also concluded that the greater limitations Dr. Balogh found were inconsistent with Plaintiff's medical records, including treatment records from Dr. Balogh himself and other providers at Six County, Inc. (*Id.*) The ALJ's determinations in this regard are supported by substantial evidence. While treatment notes from providers at Six County, Inc., including Dr. Balogh, showed some abnormalities, many demonstrated normal findings on psychiatric examinations. (R. at 39–50, 352–60, 362, 366, 368, 370–77, 380–87, 390–97, 417, 419–26, 504–23, 534–83, & 589–98.) Notably, providers, including Dr. Balogh, generally found that Plaintiff's thought processes were clear and linear, she had no overt delusions, and her judgment and insight were intact. (*Id.*) These are good reasons and the ALJ correctly discounted Dr. Balogh's opinion accordingly. *See Cosma v. Comm. of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016) (holding the ALJ reasonably gave no weight to doctor's opinion in part because it conflicted with the objective medical evidence in the record and the doctor's own treatment notes); *see also Warner v. Comm. of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (finding it was

proper to reject doctor's conclusion regarding plaintiff's limitations when it was inconsistent with the substantial evidence in the record indicating otherwise).

Plaintiff argues that the ALJ credited Dr. Balogh's opinion that Plaintiff was "markedly impaired" in her ability to follow instructions but did not account for this limitation in assigning the RFC. (ECF No. 10, at pg. 7; ECF No. 17, at pg. 2.) The Undersigned does not find Plaintiff's argument persuasive. The ALJ specifically noted that Dr. Balogh indicated that Plaintiff had marked limitation in understanding complex job instructions, which supported limiting Plaintiff to simple, routine tasks and simple to moderately complex tasks. (R. at 23.) The ALJ additionally noted that Plaintiff's marked limitation in understanding complex job instructions supported Plaintiff's social restrictions and the limitation to low stress work as defined in the RFC. (*Id.*) Furthermore, the ALJ found the following with respect to Plaintiff's ability to follow instruction:

> In understanding, remembering, or applying information, the [Plaintiff] has moderate limitations. In her function report, the [Plaintiff] stated that her impairments do not affect memory or understanding; however, she alleged that she becomes confused when following instructions (Ex. 3E/5). As discussed further below, the [Plaintiff's] treatment records consistently show intact memory (Ex. 2F; 5F; 9F). The consultative psychological examiner, Dr. Edwards, found no problems with confusion or concentration, she had no problems with calculations, and she had no problems with abstractions, but her interpretation of proverbs was concrete (Ex. 4F/4). She also displayed good memory, but she had some difficulty with new learning because she needed two trials to learn a list of four words (Ex. 4F/4). These findings support moderate limitations in understanding or applying information.

(R. at 17.) The ALJ's findings are supported by substantial evidence. Dr. Edwards opined that Plaintiff did not have understanding or memory limitations, and that she had the ability to carry out very short and simple instructions. (R. at 92.) Dr. Balogh opined that Plaintiff had only mild limitations in her ability to understand and carry out simple job instructions. (R. at 489.) The ALJ's RFC finding is consistent with these limitations in finding that the Plaintiff needs a

position that is low stress, with no public interaction, and with only occasional decisionmaking and occasional changes.  (R. at 17.)  Furthermore, the ALJ specifically noted that to the extend Dr. Balogh's assessment indicates greater limitations than the limitations in the RFC, it received "little weight."  (R. at 23.)

The Plaintiff also argues that the hypothetical the ALJ posed to the vocational expert needed to include a limitation for an inability to follow work instructions.  (ECF No. 10, at pg. 8.)  However, "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927–28 (6th Cir. 1987)). Here, the ALJ incorporated all the limitations she found credible into the hypothetical question. Accordingly, the Undersigned does not find Plaintiff's argument persuasive.  *Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 250 (6th Cir. 2016) (finding ALJ's hypothetical questions to the vocational expert "fairly portrayed" the claimant's limitations as supported by the objective evidence and that "the ALJ was under no obligation to include" limitations that he found not credible in such hypotheticals); *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 494 (6th Cir. 2016) (rejecting contention that the ALJ erred by relying on VE testimony given in response to hypothetical that did not incorporate all of claimant's limitations "because the ALJ's hypothetical question incorporated all of the functional limitations that he found to be credible").

## CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes the ALJ provided good reasons for discounting the weight of Plaintiff's treating physician's opinions and that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is

**RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: June 11, 2019        */s/ Elizabeth A. Preston Deavers*
                                    **ELIZABETH A. PRESTON DEAVERS**
                                    **CHIEF UNITED STATES MAGISTRATE JUDGE**